UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


In re:

TOM D. JOHNSON,

          Debtor.

                                Case No. 10-14292
                                Honorable Julian Abele Cook, Jr.


<u>ORDER</u>

      This case relates to an appeal by the appellant-debtor, Tom D. Johnson, from a decision by the Bankruptcy Court in the Eastern District of Michigan to grant a summary judgment in favor of the appellee-creditor, the Comerica Bank.  The underlying action arose out of a claim for damages by Johnson who had contended that the Comerica Bank had violated the discharge injunction imposed under 11 U.S.C. § 524(a)(2). *See* Amended Opinion Regarding Debtor's Motion for Damages for Comerica Bank's Alleged Violations of the Discharge Injunction, No. 94-48884, (Bankr. E.D. Mich. Oct. 14, 2010), Bankr. Docket No. 776 ("Amended Opinion").

I.    <u>Factual and Procedural History</u>

      In connection with his employment at The Equitable Life Assurance Society of the United States ("Equitable"), Johnson became a participant in a long-term disability plan.[1] Following a

---

      [1]The Equitable Life Assurance Society of the United States Employees, Managers and Agents Long Term Disability Plan ("Plan").

1

stroke which left him disabled in 1991, he began to receive disability benefits from Equitable in accordance with the Plan, which included the following anti-alienation or spendthrift clause:

> Spendthrift Clause – To the extent permitted by law, Members are prohibited from anticipating, encumbering, alienating or assigning any of their rights, claims or interest in this Trust or in any of the assets thereof, and no undertaking or attempt to do so shall in any way bind the plan Administrator or the Trustee or be of any force or effect whatsoever. Furthermore, to the extent permitted by law, no such rights, claims or interest of a Member in this Trust or in any of the assets thereof shall in any way be subject to such Member's debts, contracts or engagements, nor to attachment, garnishment, levy or other legal or equitable process.

Plan, Article IX, § 9.2.

In addition to his employment with Equitable, Johnson was also involved in an independent real estate development enterprise. In 1985, Johnson, acting in his capacity as an independent entrepreneur, co-signed and guaranteed repayment of a promissory note to the Comerica Bank in exchange for a loan that it extended to the Greenwood Centre, Inc. ("Greenwood"), a corporation that was wholly owned by him. This note had been secured by (1) a mortgage on the Greenwood commercial real estate, and (2) a security interest granted to the Comerica Bank in Johnson's accounts receivable, general intangibles and contract rights. *Comerica Bank v. Johnson (In re Johnson)*, 166 F.3d 1214, 1998 WL 833774, at *1 (6th Cir. 1998) (unpublished table decision). The terms within the security agreement specified that (1) "accounts receivable" referred to "all accounts and general intangibles including, but not limited to . . . insurance proceeds, [and] beneficial interests in trusts;" and (2) the agreement was to be governed by and construed in accordance with Michigan law. (*See* Amended Op. at 4).

However, Greenwood subsequently defaulted in its contractual obligations to the Comerica Bank. In February 1994, the Comerica Bank initiated legal proceedings against Johnson, Equitable, and other entities in the Jackson County Circuit Court of Michigan in an effort to enforce its

2

security interest.

In September 1994, the state court proceedings were stayed when Johnson sought protection under Chapter 11 of the Bankruptcy Code.[2] At that time, Johnson owed the Comerica Bank an amount in excess of one million dollars. In a May 1996 order, the Bankruptcy Court determined, *inter alia*, that (1) the Comerica Bank had a valid and perfected security interest in Johnson's general intangibles, contract rights, and accounts receivable; and (2) Johnson's disability benefits under the Plan were exempt under Michigan law. An appeal to this Court followed. In its order, this Court generally affirmed the decision of the Bankruptcy Court, but noted that it "did not determine whether the disability payments are subject to a security interest of [the Comerica Bank] and, if so, whether [Johnson] has waived his right to claim an exemption for such benefits under Michigan law." Thereafter, the case was remanded to the Bankruptcy Court for such action as would be necessary to address these stated issues. *See Comerica Bank v. Johnson*, No. 96-74790 (E.D. Mich. May 30, 1997), ECF No. 11.

In a portion of the May 1996 order that was not appealed, the Bankruptcy Court had granted the Comerica Bank's request for a partial lifting of its automatic stay.  In so doing, it authorized the Comerica Bank to proceed with the previously-filed state court action to enforce its contractual rights and security agreement. In October 1996, the state court (1) granted a summary judgment in favor of the Comerica Bank "*in rem* only as to all [of Johnson's] collateral held by Comerica Bank" and (2) determined that the Comerica Bank "holds and shall continue to hold a perfected security interest in all contract rights, general intangible and accounts receivables of [Johnson]." (Order Granting Summary Disposition, Case No. 94-68152 (Jackson Cty. Cir. Ct. Oct. 10, 1996), Copy

---

[2]The case was subsequently converted to a Chapter 7 bankruptcy.

at Bankr. Docket No. 643, Ex. D). However, in recognition of the decision by the Bankruptcy Court that Johnson's disability benefits were exempt, the state court excluded them from its judgment. Following the entry of the state court ruling, Equitable began to withhold certain fees, excluding the disability payments, that were otherwise payable to Johnson.

Johnson received a discharge in October 1997. The following month, the Comerica Bank filed a motion seeking a determination of the remanded issues by the Bankruptcy Court. Although the Bankruptcy Court held a hearing on this motion and requested - and received - suggested findings of fact and conclusions of law from the parties, it took no further action on the motion and the Bankruptcy Judge left the bench shortly thereafter. These issues apparently remained unresolved. The case was closed in 2001, with no further action by either Comerica or Johnson to seek the bankruptcy court's resolution of these issues for the next six years.

However, during the latter part of 2005, the Comerica Bank, through its new counsel, Scott S. Brinkmeyer, sought to determine the status of any unresolved claims relating to its perfected security interests in Johnson's contract rights, accounts receivable, and general intangibles. In February 2006, Brinkmeyer wrote a letter to Peter Teholiz, who had represented Equitable in a majority of the court proceedings that preceded the closure of the bankruptcy case. Brinkmeyer stated that his predecessor's files were "in complete disarray," "seemingly incomplete," and "hopelessly disorganized," and sought Teholiz's assistance in determining whether and how certain issues (including those issues that had been remanded by this Court) were resolved between the Comerica Bank and Equitable. (Brinkmeyer letter of February 24, 2006, Copy at Bankr. Docket No. 713-2, Ex. 3, at 1, 2). This and subsequent letters reflect a substantial degree of confusion that was generated by the court proceedings and related rulings (or lack thereof) in this case. Nevertheless,

4

Brinkmeyer expressed his belief that the issue of the disability benefits had been resolved in favor

of his client. This understanding was based in part on an unsigned order that had been filed by the

Bankruptcy Court clerk and entered on the court docket in October 1998. This unsigned order

facially appeared to hold that the Comerica Bank (1) had a perfected lien on Johnson's disability

payments, and (2) was granted a partial lift of the stay with regard to these payments. The parties

have since agreed that this docket entry (1) was not an official order of the Bankruptcy Court, and

(2) only contained proposed findings of fact and conclusions of law that had been prepared and

entered by the Comerica Bank's prior counsel.

Brinkmeyer's letter to Teholiz on March 29th reads, in relevant part:

> The purpose of this letter is to summarize my understanding of key issues between the parties arising from the bankruptcy of Tom D. Johnson, and the related lawsuit instituted by my client in the Jackson County Circuit Court. I will also provide my understanding of the impact of the Orders issued by the respective courts and the status of the parties' positions as a result of the court rulings.
>
> Over the past few weeks I have attempted to organize [my predecessor's] files, which as I informed you were both disorganized and incomplete, and to acquire updated docket sheets and copies of the pertinent pleadings and Orders from both courts.[3] I have reviewed box loads of information and now believe that the following chronology of events is accurate, barring contradictory information from you. In the event that you disagree with any of my conclusions, please reply at your earliest opportunity and provide whatever information you may have to the contrary.
> . . . .
> The portion of the docket of the bankruptcy court which I retrieved from [my predecessor's] file stopped abruptly at entry number 453 on October 14, 1997. I subsequently obtained a copy of the remainder of that file . . . . It also included docket number 553, which was filed with the bankruptcy court on October 8, 1998. That judgement [sic] is entitled "*Findings of Fact, Conclusions of Law and Judgment*,' a copy of which is attached . . . .

---

[3]The files of the Bankruptcy Court files had been moved to the National Archives in Chicago, Illinois for purposes of security and safe-keeping.

5

Notably, although the judgment was stamped as filed by the clerk on October 8, 1998, it is not signed. Nevertheless, the docket from the bankruptcy court reflects that the judgment was entered on October 9, 1998. . . . The conclusions of law therein include a determination that the 26 USC § 501(c)(9) disability payments being made by The Equitable to Mr. Johnson were covered by [the Comerica Bank's] security agreement, subject to its perfected lien and the partial lift of stay granted by the bankruptcy court. I could find no docket entry reflecting an appeal of that judgment by either party.

. . . .

Insofar as disability benefits, service fees and the applicable interest rate issues are concerned, my reading of the decisions by [the Bankruptcy Court Judge] and the Jackson County Circuit Court suggests that those issues have been decided in favor of [the] Comerica Bank. I have nothing to indicate that there was any further appeal of those decisions which yielded a different result, but I stand to be corrected if you have contrary information. I appreciate that you have indicated that The Equitable has been accumulating the service fees, presumably with interest, and has not made any payments to Mr. Johnson. . . .

It is my expectation, however, that the same cannot be said for the § 501(c)(9) disability benefits. I would like to think that they, likewise, have been retained and would certainly like to know the status of those payments. The documents I have retrieved from [my predecessor's] file reflect his calculations of those accrued amounts to be quite substantial. As a consequence, it would appear that there is a judgment in place in favor of [the] Comerica Bank and against The Equitable pertaining to those disability payments and service fees, which needs to be resolved. If you disagree, please provide copies of any documentation which you suggest contradicts this conclusion.

. . . .

It is naturally my hope that these issues can be resolved amicably as between [the] Comerica Bank and The Equitable. I would hope to save the time and expense of having to reopen one or both of these cases in order to resolve these issues, but far to [sic] much time has passed for my client to wait too much longer. Consequently, I encourage you to pass this information along to The Equitable as quickly as possible and reply to this letter at your earliest opportunity so that we may explore the possibilities of prompt resolution.

(Brinkmeyer letter of March 29, 2006, Copy at Bankr. Docket No. 691, Ex. A).

Teholiz does not recall Brinkmeyer ever having made a request or a demand that Equitable withhold Johnson's disability payments. Nevertheless, Equitable wrote to Johnson on May 26, 2006, and notified him that it (1) had received an "apparent ruling from the U.S. Bankruptcy Court

6

in 1998 holding that you lawfully assigned your long-term disability ('LTD') benefit to [the] Comerica Bank," and therefore (2) would commence freezing payments of his disability benefits. (Equitable letter of May 26, 2006, Copy at Bankr. Docket No. 713-2, Ex. 7). The "ruling" referred to in the letter was apparently the unsigned-but-docketed order that has been discussed above. Equitable stated that it would hold these benefits in trust until it could confirm whether the ruling was valid and enforceable. On June 26th, Equitable sent another letter to Johnson in which it stated that, "[a]fter thoroughly researching the outstanding issue, we understand that there is no final ruling as to your assignment of your Plan benefits." (Equitable letter of June 26, 2006, Copy at Bankr. Docket No. 713-2, Ex. 8). However, Equitable asserted that it remained obligated to freeze the payments pending a final resolution of the contested issue. Thereafter, Equitable withheld its payments to Johnson for the months of September and October 2006. After further litigation in the state court, Equitable subsequently resumed these payments to Johnson and paid the previously withheld monies to him.

In May 2007, Johnson filed a motion in the Bankruptcy Court,  in which he sought an order that would require the Comerica Bank to pay him more than three million dollars in actual and punitive damages for several alleged violations of the discharge injunction. Because under Sixth Circuit precedent, there is no private right of action under 11 U.S.C. § 524(a)(2) for a violation of a discharge injunction, *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422-23 (6th Cir. 2000), the Bankruptcy Court construed Johnson's request for relief as a motion to hold the  Comerica Bank in civil contempt. Thereafter, the case was reopened to permit Johnson to proceed with this claim.

Following a hearing in January 2008, the Bankruptcy Court directed the Comerica Bank to

submit a motion for summary judgment with respect to some of its defenses to Johnson's motion.

In March 2008, the Bankruptcy Court granted a summary judgment in favor of the Comerica Bank

- and denied Johnson's motion - on all issues "except with respect to the allegations contained in

¶ 18 of [his] damages motion." (Bankr. Docket No. 679, ¶¶ 1-2).[4] The Bankruptcy Court ordered

additional briefing and oral argument, and subsequently permitted the parties to conduct additional

discovery regarding this unresolved claim. After yet another hearing and another round of

supplemental filings, the Bankruptcy Court issued an order in December 2008 in which it (1)

concluded that no court had made a definitive final ruling in this case regarding whether the

security interest of the Comerica Bank covered Johnson's disability benefits, and (2) ordered the

parties to submit additional briefing on this issue. Analysis of this issue led the Bankruptcy Court

to require the parties to brief the questions of whether (1) an anti-alienation provision in the Plan

was enforceable under New York law[5] and (2) that provision was invalidated by Article 9 of the

Uniform Commercial Code.

Finally, on October 14, 2010,[6] the Bankruptcy Court issued an order in which it held:

(1) Brinkmeyer's March 29 letter - in particular, the paragraph beginning with "It
is my expectation" - constituted an implied demand that Equitable withhold

---

[4]Paragraph 18 alleged that the "Comerica [Bank], through fraudulent and/or careless misrepresentation of the existence of a court order, caused The Equitable to stop paying Debtor's disability income until Debtor succeeded in a separate state court action to recover the disability income." (Debtor's Verified Mot. for Damages From Creditor for Violation of Stays and Other Relief, Bankr. Docket No. 639, ¶ 18).

[5]The Plan contained a choice of law clause which provided that, to the extent it was not preempted by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*, ("ERISA"), its terms and conditions were to be construed and administered under New York law.

[6]The Bankruptcy Court had initially rendered an opinion on October 11, 2008, but issued an amended opinion three days later in which it made several minor changes to the first version.

Johnson's disability payments and an implied threat of litigation if it did not do so;

(2) The Comerica Bank's security interest covers Johnson's right to receive disability payments because:

> (a) his right to these payments was a contract right, which qualifies as an "account" or "general intangible" within the meaning of the security agreement;

> (b) the anti-alienation provision in the Plan was ineffective as against the Comerica Bank's security interest; and

> (c) New York trust law does not invalidate the Comerica Bank's security interest because the Plan is not an express trust within the meaning of New York law;

(3) Johnson, in granting a security interest to the Comerica Bank, had waived his right to claim an exemption as against the Comerica Bank in his right to receive disability payments; and

(4) The Comerica Bank's valid lien was not avoided during the bankruptcy case and thus survived Johnson's discharge and remained enforceable.

This appeal followed.

II.   <u>Standard of Review</u>

A federal district court has jurisdiction to hear appeals - and an aggrieved litigant may appeal as of right - from "final judgments, orders, and decrees" of a bankruptcy court. 28 U.S.C. § 158(a)(1). On appeal, this Court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *Made In Detroit, Inc. v. Official Cmte. of Unsecured Creditors of Made In Detroit, Inc. (In re Made In Detroit, Inc.)*, 414 F.3d 576, 580 (6th Cir. 2005); *see also* Fed. R. Bankr. P. 8013 ("On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the

bankruptcy court to judge the credibility of the witnesses."). Under the clearly erroneous standard, "if the trial court's account of the evidence is plausible in light of the record viewed in its entirety, a reviewing court may not reverse even if convinced that it would have weighed the evidence differently as trier of fact. . . . Indeed, reversal under the clearly erroneous standard is only warranted if the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Matter of Love*, 957 F.2d 1350, 1354 (7th Cir. 1992) (citation and internal quotation marks omitted).

III.   <u>Analysis</u>

    A.    <u>The Parties' Arguments</u>

The parties state that a resolution of this appeal depends primarily upon whether (1) the Comerica Bank, through Brinkmeyer's letters, undertook an action that was designed to collect a discharged debt as a personal liability of Johnson, and (2) if so, whether the Comerica Bank had a perfected lien on Johnson's disability benefits that survived the bankruptcy discharge. If a lien attached to the post-petition disability benefits, the Comerica Bank, notwithstanding the discharge injunction, had a right to seek the collection of those benefits. This latter question, in turn, is dependent upon the answers to the following underlying questions.

The first question is whether the Plan's spendthrift clause prevented Johnson from validly assigning his right to benefits under the Plan. If so, the Comerica Bank never obtained a valid security interest in these benefits. The Comerica Bank argues that the spendthrift clause was invalidated by Section 9-318(4) of the former New York Uniform Commercial Code (N.Y.U.C.C.)

[7] which provides as follows:

> A term in any contract between an account debtor and an assignor is ineffective if it prohibits assignment of an account or prohibits creation of a security interest in a general intangible for money due or to become due or requires the account debtor's consent to such assignment or security interest.

Johnson counters by asserting that Article 9 - including the restraint on spendthrift clauses - does not apply to the transaction at issue because it falls within an exclusion from its coverage. Specifically, he claims that the transaction was a transfer of a claim for an employee's other compensation, which is excluded from Article 9 by § 9-104(d), and/or a transfer of a claim under a policy of insurance that is excluded from Article 9 by § 9-104(g). Moreover, Johnson submits that, even if Article 9 has applicability to the transaction at issue, the specific anti-anti-alienation provision does not apply because the disability benefits are not an "account" within the meaning of that provision. He also asserts that § 9-318(4) is preempted by the trust law of New York and, as such, it does not invalidate the Plan's spendthrift clause.

The second question is whether the security interest of the Comerica Bank, if valid, was cut off by the operation of 11 U.S.C. § 552. Johnson maintains that, even if the security agreement effected a valid transfer of benefits, § 552 prevented the pre-petition lien from attaching to his post-petition assets. Hence, according to him, the Comerica Bank - acting without a valid lien on his disability benefits - violated the discharge injunction by attempting to collect them. Thus, Johnson asks the Court to remand this matter to the Bankruptcy Court for appropriate action on his motion

---

[7]The N.Y.U.C.C. was revised, with an effective date of July 1, 2001. However, the provisions in force on the date when the parties executed their security agreement are applicable here because the Revised N.Y.U.C.C. § 9-702(a) provides that the revisions do not apply to those actions or proceedings which had commenced before the revisions took effect. Unless otherwise stated, all citations to N.Y.U.C.C. will refer to the provisions as they existed when the security agreement was executed.

to hold the Comerica Bank in civil contempt of the discharge injunction. As a counter position, the Comerica Bank asserts that (1) Johnson is precluded from raising this argument inasmuch as this issue has already been resolved by a state court; and (2) § 552 does not cut off pre-petition security interests in those post-petition proceeds that have been generated from pre-petition collateral, such as the disability benefits here at issue.

However, the Comerica Bank submits that the Court need not even consider these issues because the correspondence between Brinkmeyer and Teholiz did not represent an attempt to recover a discharged debt as a personal liability to the debtor. Rather, it is the position of the Comerica Bank that Brinkmeyer was proceeding in good faith to determine the current status of the Bankruptcy Court's resolution of the disability payments issue. Thus, the argument goes, even if the Comerica Bank did not have a valid security interest in the payments, mere inquiry - effectively informal discovery - would not constitute a violation of the discharge injunction.

B.    Brinkmeyer's letters

The Comerica Bank argues that, for the purposes of responding to Johnson's motion to hold it in contempt, the issue of whether it had a valid security interest in his right to receive disability payments before or after the discharge is not relevant to this controversy because Brinkmeyer's letters did not constitute a violation of the discharge injunction in either case. The discharge injunction is found in 11 U.S.C. § 524(a), which provides, in relevant part, as follows:

A discharge in a case under this title –

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [debt discharged under section 727] as a personal liability of the debtor, whether or not discharge of such debt is waived. . . .

12

11 U.S.C. § 524(a)(2). "The § 524(a) post-discharge injunction embodies the 'fresh start' concept inherent in the Bankruptcy Code by allowing the debtor to begin anew with a debt-free start and without pressure from creditors to repay discharged debts." *In re Lafferty*, 229 B.R. 707, 712 (Bankr. N.D. Ohio 1998); *see also In re Borowski*, 216 B.R. 922, 924 (Bankr. E.D. Mich. 1998) (citation and internal quotation marks omitted) ("The purpose of the permanent injunction . . . is to effectuate one of the primary purposes of the Bankruptcy Code: to afford the debtor a financial 'fresh start.'").

Unlike the automatic stay provision in 11 U.S.C. § 362, the discharge injunction provision does not specify any remedy for its violation. *Cf.* 11 U.S.C. § 362(k)(1) ("[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."). Nevertheless, upon a finding of a willful violation of the discharge injunction, courts routinely award damages pursuant to their contempt power under 11 U.S.C. § 105(a). *See, e.g.*, *Paul v. Iglehart* (*In re Paul*), 534 F.3d 1303, 1306 (10th Cir. 2008) ("Under 11 U.S.C. § 105(a), bankruptcy courts have the equitable power to enforce and remedy violations of substantive provisions of the Bankruptcy Code, including in particular the discharge injunction in § 524(a)(2)."); *In re Waldo*, 417 B.R. 854, 891 (Bankr. E.D. Tenn. 2009).

It is not enough to find that a discharge violation has occurred - in order to impose sanctions upon an alleged violator, the court must also conclude that the challenged act was contemptuous - which, in this context, means that it was willful. *E.g.*, *Gunter v. Kevin O'Brien & Assocs., LPA (In re Gunter)*, 389 B.R. 67, 75 (Bankr. S.D. Ohio 2008) ("In light of the Sixth Circuit's holding in *Pertuso*, this court cannot award damages for violations of the discharge injunction that are

13

technical or inadvertent and do not rise to the level of contempt."); *Kanipe v. First Tenn. Bank (In re Kanipe)*, 293 B.R. 750, at 756 (Bankr. E.D. Tenn. 2002) (denying sanctions because, "although a violation of the discharge injunction occurred, the violation was not willful and therefore not contemptuous"). "[W]hen determining whether to hold a creditor in contempt for violating the discharge injunction, courts tend to utilize the standard employed when determining whether or not a creditor willfully violated the automatic stay; i.e., whether the creditor deliberately acted with knowledge of the bankruptcy case." *In re Waldo*, 417 B.R. at 891. This standard does not require a determination that the creditor deliberately violated the injunction. Rather, it is sufficient if the creditor intended the acts that constituted the violation. *Hardy v. I.R.S. (In re Hardy)*, 97 F.3d 1384, 1390 (11th Cir. 1996). A debtor who alleges a violation of § 524(a)(2) must establish by clear and convincing evidence that the violation occurred and that the alleged violator acted with knowledge of the injunction. *In re Gunter*, 389 B.R. at 72(citing *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 550 (6th Cir. 2006)) ("The plaintiff bears the burden of proving both elements - violation and knowledge - by clear and convincing evidence"); *Lover v. Rossman & Co. (In re Lover)*, 337 B.R. 633, 635 (Bankr. N.D. Ohio 2005). *But see, e.g.*, *Glenn v. Ocwen Loan Serv., LLC (In re Glenn)*, No. 03-15220, 2010 WL 2203042, at *2 (Bankr. S.D. Ala. May 28, 2010) (noting that many - but not all - courts require clear and convincing evidence).

There is no question that the Comerica Bank was aware of the discharge injunction. Moreover, there is not any question that the Comerica Bank intended its actions. Therefore, the only question is whether Brinkmeyer's letters, in the absence of a valid lien, would constitute a violation of the discharge injunction - that is, whether the challenged act was an attempt to collect a debt as a personal liability of Johnson.

14

The Bankruptcy Court, without any analysis or an explanation, concluded that Brinkmeyer's March 29th letter contained an implied demand that Equitable withhold Johnson's disability payments. (*See* Amended Opinion at 9 ("Teholiz states in his affidavit that he does not 'recall Mr. Brinkmeyer ever asking [him] to advise or demand that . . . Equitable withhold disability payments to [Johnson].' But the Court finds that such a demand was implied by the language in Brinkmeyer's March 29, 2006 letter . . . . In any case, after receiving the letter, The Equitable withheld disability payments . . . .")). Moreover, it neither analyzed nor determined whether such a demand, if unaccompanied by a valid lien, would constitute a contemptuous violation of the discharge injunction.  On one hand, it could be presumed that the Bankruptcy Court operated under the assumption that this implied demand would have violated the discharge injunction.  If it had been otherwise, its careful, persuasive, and thorough analysis of the efficacy of the Comerica Bank's lien would have been unnecessary.[8] On the other hand, it is plausible that the Bankruptcy Court simply preferred to rest its ruling on the alternative ground that the Comerica Bank possessed a valid lien on the disability benefits, and thus did not find it necessary to determine whether, in the absence of the lien, the Comerica Bank would have violated the discharge injunction. In any event, the

---

[8]The Court notes that this issue is only relevant with respect to Johnson's allegation that the Comerica Bank violated the discharge injunction because it has expressly abandoned any claim to his disability benefits. (*See* Amended Opinion at 46 n.90). The Comerica Bank has reasserted this position on appeal. (*See* Appellee's Br. on Appeal at 14 ("What benign remedy would a creditor otherwise have to verify and enforce such a lien? Only three possible approaches come to mind: (1) seek to resolve the claim via settlement, (2) seek the [C]ourt's interpretation, and (3) simply abandon the the [*sic*] claim. Once it became apparent that attempts at settlement were going nowhere, [the Comerica Bank] elected the third option - it ended up not pursuing its claim. Counsel for the [Comerica Bank advised] the Court as to this fact in the proceedings below.")). The Court makes no ruling as to whether the Comerica Bank would be permitted to change course and seek to revive this claim inasmuch as the issue is neither before it nor has this matter been briefed.

15

Bankruptcy Court neither discussed the appropriate legal standard and burden of proof nor expressly determined that Johnson had met his burden of establishing by clear and convincing evidence that the Comerica Bank violated the discharge injunction. However, the Court concludes that it is appropriate to initially resolve the threshold question of whether the actions by the Comerica Bank would have violated the discharge injunction before attempting to address the secondary question of whether it possessed a valid lien. This approach is necessary because a creditor must be able to engage in a reasonable and necessary inquiry in order to determine the validity, if any, of its liens without fear of being sanctioned if it - or a court - concludes that the debt in question was discharged.

        As an initial matter, the Court notes that the parties have expressed their respective disagreements as to the appropriate standard of review for this issue. The Comerica Bank argues that the Bankruptcy Court's determination that the Brinkmeyer letters constituted an implied demand for payment was a conclusion of law which is subject to de novo review. Johnson, on the other hand, argues that the finding by the Bankruptcy Court "that [the Comerica Bank] was attempting to collect a prepetition debt from Mr. Johnson, and to exercise possession over the postpetition disability benefits," was a finding of fact, in which case the clear error standard would be applicable. (Appellant's Reply Br. at 9). Neither party has it exactly right. The Bankruptcy Court's determination that the quoted language constituted an implied demand is a finding of fact that this Court reviews for clear error. However, the Bankruptcy Court's determination - if indeed one was made - that Johnson had met his burden of demonstrating by clear and convincing evidence that the challenged conduct by the Comerica Bank constituted a contemptuous violation of the discharge order is a conclusion of law that the Court reviews de novo.

As both parties agree, a discharge injunction does not prohibit the holder of a valid lien from seeking to enforce it because such conduct is not considered to be an action to collect a discharged debt as a personal liability of the debtor under § 524(a)(2). *See, e.g.*, *Johnson v. Home State Bank*, 501 U.S. 78 (1991); *In re Reuss*, No. DT-07-05279, 2011 WL 1522333, at *2 (W.D. Mich. Apr. 12, 2011) ("After the automatic stay terminates as to the property, a secured creditor may take any appropriate action to enforce a valid lien surviving the discharge, as long as the creditor does not pursue *in personam* relief against the debtor."). The ability to enforce a valid lien post-discharge would be severely undermined if a creditor is not permitted to take necessary and appropriate action to determine whether it holds a valid lien that survived the bankruptcy or if, instead, it possessed a debt that was discharged by the proceedings:

> The § 524(a)(2) discharge injunction casts a wide shadow, with a large penumbra. For example, applying the phrase "collect . . . as a personal liability of the debtor" can be a confusing concept . . . . Cautious litigants who recognize that the boundary is fuzzy seek the comfort of clarification whether their particular situations are subject to the injunction.

*Ruvacalba v. Munoz (In re Munoz)*, 287 B.R. 546, 553 (9th Cir. BAP 2002).

This is precisely the approach that the Comerica Bank undertook. First, in response to the remand order by this Court in 1997, the Comerica Bank filed a motion which sought the aid of the Bankruptcy Court in resolving those issues in its favor. Notably, Johnson did not raise any argument at that time that the Comerica Bank had acted in violation of the discharge injunction. For reasons that are unclear to the Court, these issues do not appear to have been resolved until the order which is now on appeal.

After the bankruptcy case was closed in 2001, the parties continued to litigate their dispute in the state court. It was in connection with this litigation that the Comerica - via its new counsel,

Brinkmeyer - sent the letters to Equitable in the hope of sorting out the bankruptcy proceedings. The Comerica Bank chose the path of seeking a direct but informal clarification of this issue from Equitable's counsel rather than rushing to fire up the judicial machinery. In light of the confusing procedural history of this case, as compounded by the state of the files that had been left to his successor by the Comerica Bank's prior counsel (described by Brinkmeyer as being "incomplete" and "disorganized"), Brinkmeyer's letters strike the Court as not only permissible, but preferable to other courses of action that he may have chosen to undertake.  Secured - or potentially secured - creditors should not be placed in the untenable position of being permitted to enforce their valid liens but simultaneously being at risk of the imposition of sanctions for merely making inquiries as to the validity of their liens.

It is clear to the Court, upon review of the entire record, that Brinkmeyer was attempting to determine whether any court had conclusively ruled whether the Comerica Bank had or did not have an enforceable security interest in the post-petition disability benefit payments - and was not, as Johnson would have it, taking any action to collect a debt.

Therefore, to the extent that the Bankruptcy Court concluded that Brinkmeyer's actions would have constituted a violation of the discharge injunction, such a conclusion - in the opinion of this Court - is not supported by the evidence. Moreover, to the extent that the Bankruptcy Court made an implicit finding that the Comerica Bank took action to collect the disability payments, this Court concludes that such a finding is clearly erroneous.[9]

---

[9]As noted above, although the Bankruptcy Court did not explicitly make this determination, it is unclear whether it did so implicitly. Ordinarily, "[i]f the [B]ankruptcy [C]ourt's factual findings are silent or ambiguous as to an outcome-determinative factual question, the district court may not engage in its own fact finding but must remand the case to the  [B]ankruptcy [C]ourt for the necessary factual determination." *Brown v. Mt. Prospect State*

Brinkmeyer's letters repeatedly make reference to (1) the sources of his uncertainty (i.e., the incomplete and disorganized state of his predecessor's files and the unsigned-but-docketed order that appeared to resolve these issues in the Comerica Bank's favor); (2) the state of his uncertainty (e.g., "Insofar as disability benefits . . . are concerned, my reading of the decisions by [the Bankruptcy Judge] and the Jackson County Circuit Court suggests that those issues have been decided in favor of Comerica Bank. I have nothing to indicate that there was any further appeal of those decisions which yielded a different result, but I stand to be corrected if you have any contrary information." (Brinkmeyer letter of March 29, 2006, Copy at Bankr. Docket No. 691, Ex. A, at 4)); and (3) the fact-finding nature of his correspondence (e.g., "Do you have anything in your file to indicate whatever happened to [the issues remanded by this Court? If so, can you please forward that information at your earliest opportunity? It would go a long way toward resolving what, if any, further collection issues remain from the litigation." (Brinkmeyer Letter of February 24, 2006, Copy at Bankr. Docket No. 713-2, Ex. 4, at 2)).

Therefore, it is implausible to claim that these letters represent an attempt to collect these payments - and is still more implausible to claim, as Johnson does, that they represent the "fraudulent and/or careless misrepresentation of the existence of a court order [that] caused The Equitable to stop paying Debtor's disability income . . . ." (*See* Debtor's Verified Mot. for Damages From Creditor for Violation of Stays and Other Relief, Bankr. Docket No. 639, ¶ 18). Brinkmeyer

---

*Bank (In re Muncrief)*, 900 F.2d 1220, 1224 (8th Cir. 1990). However, "[i]n a bankruptcy case, remand is not necessary when the evidence is documentary, the facts are undisputed or the record presents no genuine issue of material fact." *Id.* (citation and internal quotation marks omitted). Here, the relevant facts - the letters from Brinkmeyer - are both undisputed and documentary, and the Court need not remand the matter. *See id.* at 1225 (upholding district court's finding that bankruptcy court's finding of insolvency was clearly erroneous where district court recalculated assets and liabilities based on undisputed evidence and associated testimony).

specifically stated that the order in question was not signed and, under these circumstances, asked for any information in Teholiz's possession with respect to the status of that order (*see* Brinkmeyer letter of March 29, 2006, Copy at Bankr. Docket No. 691, Ex. A at 3 ("Notably, although the judgment was stamped as filed by the clerk on October 8, 1998, it is not signed. Nevertheless, the docket from the bankruptcy court reflects that the judgment was entered on October 9, 1998. . . ."); *id.* at 4 ("If you disagree, please provide copies of any documentation which you suggest contradicts this conclusion.").

In support of his contention that the Comerica Bank violated the discharge injunction, Johnson points to a letter that was authored by Brinkmeyer on June 20, 2006. Johnson claims that, in this letter, Brinkmeyer "explicitly sought to collect from [him] and to take possession of [his] post-petition property. . . ." (Appellant's Reply Br. at 6-7). Johnson correctly notes that Brinkmeyer had asserted that it was the Comerica Bank's position that the disability payments were covered by the security agreement and advised Equitable to begin withholding disability payments lest they expose themselves to the potential of dual liability. This statement - by far the most assertive in all of Brinkmeyer's letters - does not support Johnson's claim that the Comerica Bank had misrepresented the existence of a court order. Furthermore, this statement does not represent an attempt by Brinkmeyer or his client to collect a personal debt, especially when it is considered in the context of the entire series of letters. To the contrary, in this letter, Brinkmeyer set out the Comerica Bank's position - a position that was known to all parties by virtue of the extended litigation on this very question - but did not make any representation as to what any court's resolution of the question was. Certainly, the outcome here could be different if the inquiries by Brinkmeyer were of a harassing or an abusive nature with an overall objective of attempting to

20

coerce Johnson into paying a discharged debt. *See In re Paul*, 534 F.3d at 1308 (citation and internal quotation marks omitted) ("Notwithstanding the facial permissibility of a lawsuit or some other action taken by a creditor vis a vis a discharged debtor, a violation of § 524(a)(2) may still be found if the debtor proves the creditor acted in such a way as to coerce or harass the debtor improperly, i.e., so as to obtain payment of the discharged debt."). For the reasons that have been stated above, Brinkmeyer's letters plainly do not meet this threshold.

V.     Conclusion

Although the Court expresses no disagreement with the Bankruptcy Court's analysis and resolution of the remaining issues, and while the outcomes reached below and here are identical in ultimate result, it is, in the view of this Court, necessary to explicitly address the basic question of whether the actions by the Comerica Bank could have constituted a violation of the discharge injunction regardless of the validity of its lien. A creditor should not be required to prove the validity of its lien to successfully defend its otherwise permissible actions in attempting to determine the validity of the lien in the first place. Were it otherwise, a creditor who reasonably and without harassment or coercion makes reasonable inquiries to determine the validity of its lien would be subject to sanctions if it turns out that the debtor's fiscal obligation had been discharged in the bankruptcy proceedings. However, the right to enforce a valid lien on post-petition benefits should not be held hostage to the threat of sanctions in every instance in which a creditor must make reasonable inquiry to determine the continued validity of the debtor's obligations.

Accordingly, the order from the Bankruptcy Court which denied Johnson's motion for damages is affirmed - albeit on different grounds.

21

IT IS SO ORDERED.


Dated:  May 23, 2011                              s/Julian Abele Cook, Jr.
       Detroit, Michigan                          JULIAN ABELE COOK, JR.
                                 United States District Court Judge


**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on May 23, 2011


                                      s/ Kay Doaks
                                      Case Manager